UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

James Saunders
and Teneshia Bonds,
    Plaintiffs

   v.                                             Case No. 21-cv-648-SM
                                                   Opinion No. 2021 DNH 161

Shaw's Supermarkets, Inc.,
    Defendant

**O R D E R**

James Saunders and Teneshia Bonds originally filed this action against Shaw's Supermarkets in the Cheshire County Superior Court, advancing more than a dozen constitutional, statutory, and common law claims. Shaw's removed the action, invoking this court's federal question jurisdiction as well as its diversity jurisdiction. Plaintiffs move the court to remand the case to state court, while Shaw's moves to dismiss the complaint for failure to state any viable causes of action.

For the reasons discussed, plaintiffs' motion to remand is denied and Shaw's motion to dismiss is granted.

**Standard of Review**

In considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregards any legal conclusions, and draws all reasonable inferences in the plaintiffs' favor. Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017). To avoid dismissal, the complaint must allege sufficient facts to support a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plausibility standard is satisfied if the facts alleged in the complaint, along with reasonable inferences drawn from those allegations, show more than a mere possibility of liability – "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). In other words, the complaint must include factual allegations that, if assumed to be true, allow the court to draw the reasonable and plausible inference that the defendant is liable for the misconduct alleged. See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).

**Background**

Although the precise factual backdrop to plaintiffs' claims is not entirely clear, the essence of the allegations set forth in their complaint (document no. 1-1) is as follows. Saunders

is a white man over the age of forty.  Bonds is an African American woman over the age of forty.  Both say they suffer from intellectual disabilities.  They met at a special needs program at Lexington High School, from which they both graduated in 1991.  After staying in touch for many years, they began a relationship approximately four years ago.

In the summer of 2008, Saunders began working for Shaw's in Harwich, Massachusetts, where he was employed for about five years.  After a brief period of employment elsewhere, Saunders returned to Shaw's and worked at its store in Yarmouth, Massachusetts.  Saunders then helped Bonds get a job at the same Shaw's supermarket, where they both worked while living with Saunder's mother.  In the summer of 2017, Saunders moved to Keene, New Hampshire, but he continued working in Yarmouth.  Eventually, Bonds joined him in Keene, and both began working at the Shaw's supermarket in Hillsborough.

By letter dated September 9, 2020, Shaw's terminated Saunder's employment, effective the following day.  That letter explained the reasons for Saunder's discharge as follows:

> As you are aware, on August 3, 2020, we sent you a letter in which we notified you we had conducted an investigation into your conduct on May 17, 2020, and wanted to discuss the results of that investigation

3

with you.  Before we could have that discussion, you requested time off from work to obtain treatment.  We granted your reasonable accommodation request and postponed the discipline process, provided that you complete a mandatory referral for treatment with our Employee Assistance Program (EAP), comply with a treatment plan, and provide a release so that we could communicate with EAP.

Even though we had provided you with information about the EAP employee benefit in the past, it is our understanding that you have not voluntarily taken advantage of the services.  As of the date of this letter, you have not responded to our letter dated August 3, 2020 requesting a release, except to indicate that you had received the letter.  Since you have not provided the release, despite being given 5 weeks to do so, we are forced to assume that you do not intend to comply.

Therefore, as indicated in our August 3, 2020 letter, you cannot return to work because you were non-compliant.  As a result, we must now report to you in this letter the results of our investigation into your conduct on May 17, 2020.  The investigation conducted included your input, interviews with you and a review of written correspondence that you supplied, as well as interviews with witnesses.  Based on that information and after due consideration, we have determined that on May 17, 2020, you came to the store while you were on vacation and not on the timeclock, berated the seafood clerk on duty who was closing the department for the first time, and entered the department without a hairnet or face mask, which was contrary to our Food Safety and Sanitation and COVID-19 policies.  In addition, you inspected the department, performing off the clock work without accounting for your time which is contrary to the law and our policies.  Finally, we have determined that you told the clerk "you are too slow, you are [fu...d] if I tell you that you are [fu...d] then you are [fu...d]."  Your reported conduct was completely contrary to our code of business conduct.  Regrettably, this is not your first violation of Company policies, including our code of conduct.  As recently as January 6, 2020, you were issued a final written warning for similar conduct, including the use

4

>of the "F" word.  As you know, a final warning is the last step in our progressive disciplinary process before termination of employment.
>
>Please be advised that your employment has been terminated effective September 10, 2020 for all of the reasons outlined in this letter and based on your non-compliance with the mandatory referral (which was granted in response to your accommodation request).

Dismissal Letter (document no. 3-3).

It appears that Bonds is still employed part-time at the Shaw's in Hillsborough.

Plaintiffs' complaint includes a narrative of how Saunders and Bonds met, as well as a lengthy recounting of numerous interactions – both good and bad – that Saunders had with his superiors, co-workers, and customers at the various Shaw's stores at which he had been employed.  Attached to the complaint is a 32-page, single-spaced email authored by Saunders and entitled "court part 3 and last chapter, number 5;" a brief note from Daron Friedman, the counsellor to whom Saunders was referred by Shaw's; and a summary statement of the several claims plaintiffs advance.  As articulated by plaintiffs, those claims are:

        Count 1    Slander
        Count 2    Defamation
        Count 3    Racial Discrimination

```
Count 4    Disability Discrimination
Count 5    Age Discrimination
Count 6    Financial Harassment
Count 7    Harassment
Count 8    Gender Discrimination
Count 9    Wrongful Termination
Count 10   Violation of Labor Laws
Count 11   Violation of Free Speech
Count 12   Violation of Freedom of Assembly
Count 13   Violation of Personal Happiness
```

Complaint (document no. 1-2) at 63. Plaintiffs seek somewhere between $1.3 and $1.6 Million in damages.

**Discussion**

I.  Removal was Proper.

Turning first to plaintiffs' motion to remand, that motion must necessarily be denied. This court has federal question subject matter jurisdiction because plaintiffs allege claims under both federal law and the United States Constitution. See 28 U.S.C. § 1331. The court also has diversity subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1). Shaw's properly removed the case from state court. See 28 U.S.C. §§ 1441 and 1446.

II.  Plaintiffs' Claims.

Plaintiffs appear to claim that Shaw's defamed and slandered Saunders when a supervisor "wrongly wrote [him] up for

6

being off the clock and left out all the details/facts." Complaint at 60.  There are, however, no factual allegations from which the court might plausibly infer that Saunders was "wrongfully" disciplined or that Shaw's "failed to exercise reasonable care in publishing a false and defamatory statement of fact about [him] to a third party."  Automated Transactions, LLC v. Am. Bankers Ass'n, 172 N.H. 528, 532 (2019) (quoting Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 678 (2017)).

As to their claims of racial, gender, age, and disability discrimination, plaintiffs have failed to allege (and the court has discerned no evidence in the record) that they exhausted their administrative remedies by filing a timely charge of discrimination with either the EEOC or the New Hampshire Commission for Human Rights.  See, e.g., Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009) ("As an initial matter, it is well-settled that an employee alleging discrimination must file an administrative claim with the EEOC or with a parallel state agency before a civil action may be brought.") (citations omitted).  The time for filing such charges seems to have expired (at least as they relate to Saunders).  And, the complaint does not appear to admit of any equitable exceptions to the exhaustion requirement.  See

generally Perez-Abreu v. Metropol Hato Rey LLC, 5 F.4th 89, 91-92 (1st Cir. 2021) (noting that while the administrative filing requirement is compulsory, it is not jurisdictional; that requirement is, then, subject to limited equitable exceptions).

The bases for plaintiffs' claims of "retaliation," "harassment," and "financial harassment" are unclear. But, even liberally construed, the allegations in the complaint fail to set forth the essential elements of any viable causes of action under either state or federal law.

Similarly, plaintiffs' claim for "wrongful termination" fails to state a viable cause of action. To articulate a trial-worthy claim that he was wrongfully terminated, Saunders must plausibly allege: first, that Shaw's was "motivated by bad faith, malice, or retaliation in terminating [his] employment," Cloutier v. Great Atl. & Pac. Tea Co., 121 N.H. 915, 921 (1981) (citing Monge v. Beebe Rubber Co., 114 N.H. 130, 133 (1974)), and, second, that "he was discharged because he performed an act that public policy would encourage, or refused to do something that public policy would condemn." Cloutier, 121 N.H. at 921 (citing Howard v. Dorr Woolen Co., 120 N.H. 295, 297 (1980)). While one might conceivably infer the presence of malice from the allegations set forth in the complaint, there is no

8

assertion that Saunder's was fired because he performed an act that public policy would encourage or because he refused to perform an act that public policy would condemn. Likewise, plaintiffs' unsupported assertion that Shaw's violated unspecified "labor laws" is insufficient to state a viable cause of action.

Finally, plaintiffs' constitutional claims based upon asserted violations of their rights to freedom of speech, freedom of assembly, and personal happiness fail because plaintiffs have not plausibly alleged that Shaw's is a state actor. See generally 42 U.S.C. § 1983. As this court has noted:

> Ordinarily, a federal constitutional violation does not arise when a private citizen acts. For example, barring unusual circumstances, a private employer does not violate the First Amendment rights of its employees by implementing a policy preventing employees from displaying political placards, slogans, or bumper stickers in their offices. See generally Denver Area Educ. Telecoms. Consortium v. FCC, 518 U.S. 727, 737, 116 S. Ct. 2374, 135 L. Ed. 2d 888 (1996) ("We recognize that the First Amendment, the terms of which apply to governmental action, ordinarily does not itself throw into constitutional doubt the decisions of private citizens to permit, or to restrict, speech."); Hudgens v. NLRB, 424 U.S. 507, 513, 96 S. Ct. 1029, 47 L. Ed. 2d 196 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state. Thus, while statutory or common law may in some situations extend protection or provide redress against a private

9

> corporation or person who seeks to abridge the free expression of others, no such protection or redress is provided by the Constitution itself.") (citation omitted).
>
> In other words, the First Amendment protects individuals against <u>governmental</u> action; it does not restrict the conduct of private citizens, nor is it violated when one private actor "suppresses" the speech of another.

<u>Douglass ex rel. Douglass v. Londonderry Sch. Bd.</u>, 372 F. Supp. 2d 203, 207-08 (D.N.H. 2005).

## Conclusion

For the foregoing reasons, as well as those set forth in defendant's various memoranda, the court is constrained to conclude that plaintiffs' complaint fails to plausibly allege the essential elements of any viable claims.  Defendant's Motion to Dismiss (**document no. 3**) is, therefore, necessarily granted. Plaintiffs' Motion to Remand to State Court (**document no. 6**) is denied.  All other pending motions are denied as moot.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

10

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 7, 2021

cc: James Saunders, pro se
    Teneshia Bonds, pro se
    Samuel H. Martin, Esq.
    Martha Van Oot, Esq.